**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | |
|---|---|
| In re:<br><br>PRODUCT QUEST MANUFACTURING, LLC, *et al.*[1],<br><br>                    Debtors. | **Chapter 11**<br>**Bankr. Case No. 18-50946**<br>**(Joint Administration Pending)** |
| Jonathon Walker on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>      v.<br><br>Product Quest Manufacturing, LLC, Ei LLC, Product Quest Logistics, LLC, Scherer Labs International, LLC, JBTRS, LLC and PQ Real Estate LLC,<br><br>                    Defendants. | **Adv. Pro. No. _____ - \_\_\_\_\_** |

**CLASS ACTION ADVERSARY PROCEEDING COMPLAINT FOR**
**VIOLATION OF WARN ACT 29 U.S.C. § 2101, *et seq*. AND**
**VIOLATION OF NORTH CAROLINA WAGE AND HOUR ACT**

Plaintiff Jonathon Walker ("Plaintiff") allege on behalf of himself and a putative class of similarly situated former employees of Product Quest Manufacturing, LLC, Ei, LLC, Scherer Labs International, LLC, Product Quest Logistics, LLC, JBTRS, LLC, and PQ Real Estate LLC (the "Debtors" or "Defendants"), by way of this Class Action Adversary Proceeding Complaint against Defendants as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Ei LLC (6099); (ii) Product Quest Manufacturing, LLC (4401); (iii) Scherer Labs International, LLC (5258); (iv) Product Quest Logistics, LLC (6199); (v) JBTRS, L.L.C. (1249); and (vi) PQ Real Estate LLC (4569).

## NATURE OF THE ACTION

1.      This is a class action for the recovery by Plaintiff and the other similarly situated employees of Defendants for damages in the amount of sixty (60) days' pay and ERISA benefits by reason of Defendants' violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq*. (the "WARN Act"), accrued and unpaid vacation pay and unpaid wages for time worked.

2.      Plaintiff, along with approximately 296 similarly situated employees, were terminated as part of a mass layoff ordered by Defendants on or about September 6, 2018 at its facility in Kannapolis, North Carolina. Another 300 or so employees who worked at the facility in Daytona, Florida were terminated on or about August 12, 2018 when Defendants ceased operations there.

3.      In carrying out these terminations, Defendants failed to give Plaintiff and other similarly situated employees at least sixty (60) days' advance notice of termination, as required by the WARN Act.  As a consequence of such a WARN Act violation, Plaintiff and other similarly situated employees seek his statutory remedies, together with accrued but unpaid vacation pay and unpaid wages for time worked.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, 1367 and 29 U.S.C. § 2104(a)(5).

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1409 and 29 U.S.C. § 2104(a)(5).

## THE PARTIES

### *Plaintiff*

7.    Plaintiff Jonathon Walker worked at Defendants' location at 2865 North Cannon Blvd, Kannapolis, North Carolina 28083 (the "Kannapolis Facility") and served as an Engineering Manager until his termination on September 6, 2018.

8.    Plaintiff, along with approximately 296 similarly situated employees, were terminated as part of a mass layoff ordered by Defendants on or about September 6, 2018 at the Kannapolis Facility.

9.    Upon information and belief, about 300 employees of Defendants who worked at the facility in Holly Hill, Florida, a suburb of Daytona (the "Daytona Facility"), were terminated on or about August 12, 2018 when Defendants ceased operations there.

*10.*    Upon information and belief, none of the terminated employees received notice prior to his terminations.

### *Defendants*

11.    Upon information and belief, Defendant Product Quest Manufacturing, LLC ("PQM") is a Florida limited liability company.

12.    Prior to the Petition Date, Debtors were engaged in the manufacturing of topical over-the-counter ("OTC") drugs, cosmetic products, as well as a limited number of prescription drugs and topical animal health products.

13.    Upon information and belief, Defendants' executive offices are located at 2865 N. Cannon Blvd., Kannapolis, North Carolina.

14.     Upon information and belief, in April 2013, PQM purchased Ei LLC, which owned and operated a manufacturing Facility in Kannapolis, North Carolina (PQM and Ei LLC are also referred to herein as "Defendants").

15.     Upon information and belief, PQM is the sole member and one hundred percent equity owner of Ei LLC.

16.     Upon information and belief, Non-Debtor Product Quest Acquisition Corporation, a Delaware corporation, is the sole member and owner of one hundred percent of the equity interests in PQM. PQM, a Florida limited liability company, is the sole owner of one hundred percent of the equity interests in each of Scherer Labs International, LLC, a Florida limited liability company, Product Quest Logistics, LLC, a Florida limited liability company, JBTRS, L.L.C., a Florida limited liability company, PQ Real Estate LLC, a Delaware limited liability company, and Ei LLC, a North Carolina limited liability company.

17.     Upon information and belief, Defendants maintained and operated the Kannapolis Facility, as that term is defined by the WARN Act, at 2865 N. Cannon Blvd., Kannapolis, North Carolina.

18.     Upon information and belief, Defendants also maintained and operated a Facility, as that term is defined by the WARN Act, in Holy Hill, Florida, a suburb of Daytona Beach, Florida. Specifically, the locations are adjacent properties and/or buildings located at 330 Carswell Avenue, Holly Hill, FL 32117, 540 Carswell Avenue, Holly Hill, FL 32117, 343 Carswell Avenue, Holly Hill, FL 32117, 344 Carswell Avenue, Holly Hill, FL 32117, and 331 Carswell Avenue, Holly Hill, FL 32117 (the "Daytona Facilities") (together with the Kannapolis Facilities, the "Facilities").

19.     Upon information and belief, Defendants' business failures were caused by ineffective senior leadership, employee turnover, extensive product quality issues, the recall of products manufactured at the Daytona Facility, as well as stability, contamination, and regulatory compliance issues at the Kannapolis Facility. In the fall of 2017, Defendants suffered from severe financial and operational difficulties, including key vendors placing the company on credit hold. These issues were caused by poorly executed growth plans, which led to extensive inventory issues and significant subsequent write-offs. Additionally, Defendants suffered from operational cost overruns, ineffective production standards and poor pricing practices leading to significant margin erosion.

20.     Upon information and belief, as far back as September 2016, Defendants were in default under the terms of its senior secured credit facilities.

21.     Upon information and belief, at all relevant times, the Daytona Facility had consistent problems with quality control of the products manufactured there, no effective system in place for addressing these issues, and old equipment that did not comply with cGMP manufacturing practices.

22.     Upon information and belief, in October 2017, Defendants received a notice from the United States Food and Drug Administration (the "FDA") regarding potential FDA violations at the Facilities. These violations were centered on potential cross contamination of human health and animal health products, cleaning validation practices and failure to effectively document investigations.

23.     Upon information and belief, in April 2018, Defendants received a warning letter from the FDA stating that the Kannapolis Facility was in violation of certain cGMP requirements for pharmaceutical products, and that as a result, the agency had concerns regarding potential cross contamination.

24.     On July 10, 2018, Defendants appointed Michael J. Musso as interim chief executive officer of PQM. Finding that it had lost confidence in the leadership of William Smith, about July 9, 2018, the Board of PQM terminated Mr. Smith as chief executive officer of PQM.

25.     Upon information and belief, in mid-August 2018, the Facilities lost multiple key customers as a result of the FDA warning letter about the Kannapolis Facility, and Defendants determined that it was not generating sufficient cash to sustain its ongoing business operations in the normal course due to that event, as well as mounting expenses and loss of revenue from its problems with its Florida operations.

26.     Upon information and belief, in July and August 2018, Defendants engaged in discussions with its senior secured lenders regarding potential additional financing to fund the operations at the Facilities while they sought a potential buyer.  However, given the deteriorating financial performance, the significant costs of required FDA remediation work, and the uncertainty regarding whether a future sale would occur or would yield proceeds sufficient to repay the additional loans, lenders were unwilling to advance additional funds to Defendants.

27.     Until September 6, 2018, Plaintiff and all similarly situated employees were employed by Defendants and worked at or reported to the Facilities.

28.     Upon information and belief, Defendants, as a single employer, made the decision to terminate the employment of Plaintiff and the other similarly situated former employees.

29.     On July 30, 2018, the Debtors temporarily suspended operations at the Daytona Facilities.

30.     On August 12, 2018, Defendants permanently closed the Daytona Facility, resulting the loss of approximately 300 jobs.

31.     On September 6, 2018, Defendants ceased all operations at the Kannapolis Facility, resulting in the loss of approximately 296 jobs.

32.     On September 7, 2018, Defendants filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code.

## FEDERAL WARN ACT CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this Claim for Relief for violation of 29 U.S.C. § 2101 et seq., on behalf of himself and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Fed. R. Civ. P. 23(a), who worked at, received assignments from, or reported to one of Defendants' Facilities and were terminated without cause beginning on or about August 12, 2018, and within thirty (30) days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on August 12, 2018 and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) (the "WARN Class").

34.     The persons in the WARN Class identified above (collectively, the "WARN Class Members") are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

35.     Upon information and belief, Defendants employed approximately 296 full-time employees who worked at or reported to the Kannapolis Facility and approximately 300 employees at the Daytona Facility.

36.     Upon information and belief, Defendants ran its operations under the business names Ei LLC, Scherer Labs International, LLC, Product Quest Logistics, LLC, JBTRS, L.L.C., and PQ Real Estate LLC.

37.     On information and belief, the identity of the members of the class and the recent residence address of each of the WARN Class Members is contained in the books and records of Defendants.

38.     On information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Class Member at the time of his/her termination is contained in the books and records of Defendants.

39.     Common questions of law and fact exist as to members of the WARN Class, including, but not limited to, the following:

(a) whether the members of the WARN Class were employees of the Defendants who worked at or reported to the Facilities;

(b) whether Defendants unlawfully terminated the employment of the members of the WARN Class without cause on his part and without giving them sixty (60) days advance written notice in violation of the WARN Act; and

(c) whether Defendants unlawfully failed to pay the WARN Class members sixty (60) days wages and benefits as required by the WARN Act.

40.     Plaintiff's claims are typical of those of the WARN Class.  Plaintiff, like other WARN Class members, worked at, reported to, or received assignments from the Facilities and

were terminated beginning on or about August 12, 2018, due to the mass layoff and/or plant closing.

41.     Plaintiff will fairly and adequately protect the interests of the WARN Class. Plaintiff has retained counsel competent and experienced in complex class actions, including the WARN Act and employment litigation.

42.     On or about September 6, 2018, Plaintiff was terminated by Defendants. His termination was part of mass layoffs or plant closings as defined by 29 U.S.C. § 2101(a)(2), (3), for which he and other Class Members were entitled to receive sixty (60) days advance written notice under the WARN Act.

43.     Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3), made applicable by Fed. R. Bankr. P. 7023(b)(3), because questions of law and fact common to the WARN Class predominate over any questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WARN Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants, and the individual damages they suffer are small compared to the expense and burden the individual would face prosecuting this litigation alone.

44.     Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

45.     Plaintiff intends to send notice to all members of the WARN Class to the extent

required by Rule 23.

46.    Plaintiff also bring Claims for Relief for violation of state wage laws for which he seeks class certification. These claims are brought on behalf of himself and all those similarly situated former employees who were not paid the wages and benefits to which they were entitled under the laws of the state in which they worked.

47.    The relief sought in this proceeding is equitable in nature.

## CLAIMS FOR RELIEF

**First Cause of Action**
**Violation of the Federal WARN Act, 29 U.S.C. § 2104 *et seq*.**

48.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

49.    At all relevant times, Defendants employed more than one-hundred (100) employees who in the aggregate worked at least four thousand (4,000) hours per week, exclusive of hours of overtime, within the United States.

50.    At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a)(3) and continued to operate as a business until they decided to order mass layoffs or plant closings at the Facilities.

51.    Defendants constituted a "single employer" of Plaintiff and the Class Members under the WARN Act in that, among other things:

(a)    The Defendants shared common ownership;

(b)    The Defendants shared common officers and directors;

(c)    All of the Defendants exercised *de facto* control over the labor practices governing the Plaintiff and Class Members, including the decision to order the mass layoff or plant closing at the Facilities;

10

(d)     There was a unity of personnel policies emanating from a common source between Defendants; and

(e)     There was a dependency of operations between Defendants.

52.     Defendants ordered a mass layoff and/or plant closing beginning on or about August 12, 2018 at the Facilities, as those terms are defined by 29 U.S.C. § 210l(a)(2) and 20 C.F.R. § 639.3(i).

53.     The mass layoff or plant closing at the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Defendants' employees as well as thirty-three percent (33%) of Defendants' workforce at the Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2101(a)(8).

54.     Plaintiff and the Class Members were terminated by Defendants without cause on his part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Defendants at the Facilities.

55.     Plaintiff and the Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 2101(a)(5).

56.     Defendants were required by the WARN Act to give Plaintiff and the Class Members at least sixty (60) days advance written notice of their terminations.

57.     Defendants failed to give Plaintiff and the Class Members written notice that complied with the requirements of the WARN Act.

58.     Plaintiff and each of the Class Members are "aggrieved employees" of Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

59.     Defendants failed to pay Plaintiff and each of the Class Members his respective wages, salary, commissions, bonuses, accrued vacation and personal time off for sixty (60) days

11

following his respective terminations, and failed to make the pension and 401(k) contributions and provide employee benefits under COBRA for sixty (60) days from and after the dates of his respective terminations.

60. The relief sought in this proceeding is equitable in nature.

**Second Cause of Action**
**Unpaid Wages Under § 95-25.22 of the North Carolina Wage and Hour Act**

61. Plaintiff, on behalf of himself and similarly situated employees who worked at or reported to Defendants' Facilities in North Carolina seeks payment of all unpaid wages in violation of § 95-25.22 the North Carolina Wage and Hour Act and accrued but unpaid vacation pay, plus interest at the legal rate from the date each amount first came due.

62. Pursuant to 95-25.22(a)(d), they seek liquidated damages equal to their unpaid wages, accrued vacation and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief as against Defendants, jointly and severally:

A. Certification of this action as a class action;

B. Designation of Plaintiff as Class Representative;

C. Appointment of the undersigned attorneys as Class Counsel;

D. An allowed wage priority claim for up to $12,850 of the WARN Act claims of Plaintiff and each of the other similarly situated former employees under 11 U.S.C. § 507(a)(4) and (5), and the remainder as a general unsecured claim, or, in the alternative, post-petition administrative expense claim equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for 60

days, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the federal WARN Act, 29 U.S.C. §2104(a)(1)(A), against Defendants in favor of Plaintiff and the other similarly situated former employees equal to those sums;

E.      A priority wage claim against the Debtors pursuant to 11 U.S.C. § 507(a)(4) in favor of the Plaintiff and the other similarly situated former employees for unpaid wages, payment of accrued vacation time, interest, applicable liquidated damages, pursuant to the North Carolina Wage and Hour Act § 95-25.22; and for any unpaid benefits amounts due under 11 U.S.C. § 507(a)(5).

F.      Reasonable attorneys' fees and the costs and disbursements that Plaintiff will incur in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104 and pursuant to the North Carolina Wage and Hour Act § 95-25.22 and any unpaid benefits amounts due under 11 U.S.C. § 507(a)(5).

G.      Such other and further relief as this Court may deem just and proper.

Dated: September 11, 2018

Respectfully submitted,

By: s/ June L. Basden
June L. Basden
North Carolina State Bar No. 13416
**CARRUTHERS & ROTH, P. A.**
235 North Edgeworth Street (zip code 27401)
Post Office Box 540
Greensboro, North Carolina 27402
Telephone:      336-379-8651
Facsimile:      336-273-7885
Email:          jlb@crlaw.com

13

Jack A. Raisner (*pro hac vice forthcoming*)
René S. Roupinian (*pro hac vice forthcoming*)
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:   (212) 245-1000
Facsimile:    (646) 509-2070
E-mail:        jar@outtengolden.com
                 rsr@outtengolden.com

*Attorneys for Plaintiff and the putative class*

14